[No. H025585. Sixth Dist. Oct. 27, 2004.]

ANTONIO LAICO, et. al., Plaintiffs and Respondents, v.
CHEVRON U.S.A., INC., Defendant and Appellant.

650

652

## Counsel

Horvitz & Levy, David M. Axelrad, Andrea M. Gauthier; Steptoe & Johnson and Lawrence P. Riff for Defendant and Appellant.

Law Offices of Raphael Metzger and Gregory Coolidge for Plaintiffs and Respondents.

## Opinion

**ELIA, J.**—In this action based on premises liability and defective product design, the jury awarded damages against defendant Chevron U.S.A., Inc. (CUSA) for negligent management of the premises on which plaintiff Antonio Laico was injured. On appeal, we are asked to review the trial court's denial of CUSA's motions for nonsuit, judgment notwithstanding the verdict and a partial new trial. CUSA contends that it owed no duty as a landowner to protect Laico from injuries arising from his employment at the facility that occupied the premises. CUSA further argues that the jury's findings of breach and causation are unsupported by the evidence, and that a new trial is necessary to apportion fault. We find merit in CUSA's first argument and therefore must reverse the judgment.

### Background

Between August 15, 1991 and December 31, 1992, plaintiff Antonio Laico was a "special employee" of Chevron Research and Technology Company (CRTC).[1] CRTC was engaged in scientific and applied research relating to the petrochemical business. It operated engine laboratory facilities on property owned by CUSA. Laico's job as a shift technician in the lube lab required him to test the performance of oils in both diesel and gasoline engines. He provided oil and gasoline for the tests, took oil and diesel fuel samples,

---

[1] The parties denominated him a "special employee" because he was supervised by CRTC, but his employer technically was Kelly Services, a temporary employment agency, from which he had obtained the job.

replaced fuel filters, measured gasoline levels in tanks, and monitored the engines. At the end of each test he would measure the oil and, for diesel engines, flush out the remaining fuel, draining it into a bucket.

To change filters he had to catch leaking fuel in a bucket and dump it into another open container. He used a rag to soak up the leaks in the lube lab and threw the rags in bins. To flush the fuel lines at the end of a test, he had to open a spigot and collect about a gallon of gasoline in a bucket or can. He flushed new fuel through the line to make sure the line was cleared of old fuel. When fuel spilled onto the floor he cleaned it up with a rag. He also flushed almost two gallons of gasoline from a day tank, again using a bucket or can to collect it. CRTC supervised Laico and provided him with all the tools and equipment he needed for the job.

Laico often smelled gasoline; it was part of the working environment. He was also exposed to exhaust from the engines when he performed tests to measure the amounts of exhaust they emitted. No one told him that just two ounces of spilled gasoline could yield as much as five parts per million of benzene; no one told him even that the gasoline he was exposed to contained benzene vapors. Cal-OSHA (California Occupational Safety and Health Act) standards allowed an average airborne concentration of benzene of up to one part per million over an eight-hour workday, and a short-term (15-minute) exposure limit of five parts per million. Employers were required to comply with "Hazard Communications" standards and programs to communicate with employees and ensure the safety of working conditions. According to one of the defense witnesses, the employer was 100-percent responsible for providing a healthy and safe environment. Gayle Hunting, an industrial hygienist at CRTC between 1989 and 1994, testified that air samples taken in January 1992 revealed exposure to benzene exceeding the Cal-OSHA limits.

In January 1993 CRTC merged with and became a division of CUSA. The lube lab was shut down, and Laico was transferred to the fuel lab. In February 1995 he was hired as a regular CUSA employee.

When Laico began working at CRTC he was told he would be exposed to diesel and gasoline. He was given gloves and told always to wear them. He was also issued a respirator, but he was never told to use it in the lube lab. Employees were also not required to wear respirators while working in the fuel lab. Katlyn Diaz, an industrial hygienist for CUSA between 1994 and 1998, did not believe that the respirators were necessary for shift technicians because their day-to-day tasks did not expose them to enough benzene to require respirators.

In 1997, Laico was diagnosed with myelodysplasia, or myelodysplastic syndrome, (MDS) a blood disorder in which the blood cells in bone marrow are of insufficient number or quality. Over time MDS can convert to acute myeloid leukemia (AML). Benzene exposure damages bone marrow and can cause both MDS and AML. After his diagnosis Laico was reassigned to a different position outside the lab. At the time of trial he was performing data analysis for an engineer within CUSA.

In 1998 Laico and his wife, Carol, sued several Chevron entities, including CRTC and CUSA, along with various other gasoline manufacturers. Plaintiffs alleged that these entities had manufactured and supplied the gasoline tested at CRTC. According to the complaint, by failing to warn Laico about exposure to the toxic chemicals contained in their products, and by failing to instruct him about safe handling of these products, these defendants were liable for negligence and fraudulent concealment. Plaintiffs further alleged strict liability for defective design and failure to warn, breach of implied warranty, and premises liability. Carol Laico alleged loss of consortium.

Plaintiffs specifically argued that CUSA "was negligent with respect to the management of the land on which [CRTC] operated the engine lube and fuel labs." They also claimed that CUSA's gasoline product was defective in design, and that CUSA had failed to warn Laico of the hazard in the foreseeable use of the product. The parties stipulated that between 70 and 80 percent of the gasoline tested between 1991 and 1997 was a Chevron product. Plaintiffs presented expert testimony that Laico's exposure to gasoline during the relevant period (August 1991 to December 31, 1992) was a substantial factor in the development of his MDS.

Plaintiffs' counsel urged the jury to find CUSA liable as owner of the property because it must have been aware of the working conditions at CRTC, including the frequency and consequences of gasoline spills. Counsel pointed out that CUSA knew that testing was being performed at CRTC, since 70 to 80 percent of the gasoline tested had been sold to CRTC by CUSA. However, counsel also urged the jury to find a negligent failure to warn because Laico's injury "resulted from the *use* of the product." (Italics added.) In arguing causation, counsel relied on the abundant evidence that exposure to CUSA's gasoline was a substantial factor in producing Laico's illness. Plaintiffs' counsel acknowledged in closing argument (and the court instructed) that all of the Chevron entities were "separate and distinct from one another," and that the "acts and omissions, if any, of one of these companies are not the acts or omissions of any of the others . . . ."

In response, CUSA's counsel focused not on CUSA's nonliability as a mere landowner, but on the question of Laico's medical condition and the

safety of the workplace. Through its own expert witnesses, CUSA maintained that CRTC was a safe place to work, that CRTC was "heavily invested" in educating its workers about avoiding risks in the workplace, and that Laico did not have MDS. Regarding causation, CUSA's counsel insisted that exposure from Chevron gasoline did not cause Laico's injury. Counsel continued to argue that CRTC was not at fault, but if the jurors were to disagree, "then, obviously, CRTC has to be allocated a very major percentage of the fault."

After presenting their case, plaintiffs withdrew their warranty cause of action, and the trial court granted a motion by the "non-Chevron defendants" for nonsuit on all other causes of action. The court also granted CUSA's motion for nonsuit on the cause of action for fraudulent concealment and deemed the negligence claim to be subsumed within the claim of premises liability.

CUSA also moved for nonsuit with respect to the premises liability claim, contending that as a landowner it had no duty to Laico in his capacity as CRTC's employee. The court deferred ruling on the motion and allowed plaintiffs to reopen their case to allow evidence of CUSA's relationship to CRTC and the degree of CUSA's involvement in CRTC's operations. After examining the deposition excerpts plaintiffs proposed to introduce, however, the court found none of the proposed evidence to be relevant. Nevertheless, the court denied the nonsuit motion, ruling that CUSA had a duty as a landlord to inspect the premises, and that it was a jury question whether CUSA had breached this duty. Although the record was "very sparse in this regard," it could be inferred that CUSA was not an absentee owner of bare land, but had "some relationship" to CRTC. As the jury could reasonably infer that CUSA knew that fuel testing was taking place at CRTC, and because CRTC was located on CUSA's land, the court concluded that "the law imposes a duty of reasonable care on the part of CUSA to satisfy itself that the activities carried on by the tenant, or by whatever the relationship is between CUSA and CRTC, that those activities are reasonably safe and don't present [an] unreasonable hazard to individuals that CUSA knows are coming [onto] the premises, such as employees of CRTC."

Consistently with the trial court's rulings, the special verdict form asked the jury to consider the following questions: (1) was CUSA negligent in the management of the CRTC premises during the period from August 15, 1991 through December 31, 1992; (2) if so, was that negligence a cause of Laico's injury; (3) was there a design defect in CUSA's gasoline products; and (4) did CUSA fail to warn of a defect in its gasoline products. The jury was also asked to determine comparative fault.

The jury found CUSA negligent in the management of the CRTC premises, but found no product defect or failure to warn. Plaintiffs were found to have suffered a total of $2,296,000 in damages, of which 85 percent was the fault of CUSA, 2 percent was caused by Laico himself, and 13 percent was attributable to "all other persons or entities."

CUSA moved for judgment notwithstanding the verdict, on the ground that by means of speculation the jury had, in effect, required CUSA to be strictly liable for CRTC's conduct and to serve as a workers' compensation insurer for CRTC. CUSA argued that plaintiffs, having focused on their defective-product theory at trial, had elected not to present any facts relevant to their premises liability claim. Instead, the jury heard only that CUSA owned the land, Laico had been injured at the facility on that land, and the facility was controlled by Laico's employer, an entity other than CUSA. There was no evidence of a landlord-tenant relationship, no other legal relationship giving CUSA a right of access or control, no evidence showing what a reasonable inspection would have disclosed, and no showing that CUSA had the ability to detect and avoid an unreasonable risk of harm. Thus, CUSA argued, there was no evidence of any *breach* of duty and therefore no proof of negligence.

CUSA also moved for a partial new trial on the issues of whether CUSA had breached a duty to Laico and whether the jury had correctly allocated fault in view of the abundant evidence of CRTC's unsafe acts. In the absence of evidence that CUSA was anything more than the owner of the "bare land," it argued, the jury could only have speculated that CUSA should have discovered the conditions in the CRTC workplace. The 85 percent fault attributed to CUSA was based on its "secondary, passive failure to discover unsafe conditions." CUSA called attention to a question the jury had asked the court during deliberations, whether plaintiffs would be able to collect from any responsible entity other than CUSA.[2]

The trial court denied both motions and entered judgment for plaintiffs.

---

[2] In a note sent to the court, the jury asked whether CRTC was considered an "other" entity for purposes of allocating fault. It also asked the following: "If damages are awarded, will the [plaintiff] collect only from Chevron, or will he also collect from the entity specified in 'other'?" The court responded that CRTC was considered an "other" entity, but it instructed the jurors not to consider who would be ordered to pay any damages they might award. The court had previously instructed the jury that "the only [d]efendant against whom [p]laintiffs may seek to recover money damages in this lawsuit is [CUSA]. Plaintiffs are not permitted to seek to recover money damages from any other Chevron entity."

*Discussion*

## 1. *Scope of Review*

■ The central question presented in this appeal is whether CUSA can be held liable for negligent management of the premises on which Laico suffered injury. In its motion for nonsuit CUSA contended that it owed no duty of care to Laico for the type of harm he suffered. It addressed the sufficiency of the evidence of breach in its motion for judgment notwithstanding the verdict. "In reviewing the denial of a motion for nonsuit, appellate courts evaluate the evidence in the light most favorable to the plaintiff. Reversal is [proper only] when no substantial evidence exists tending to prove each element of the plaintiff's case." (*Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 351 [115 Cal.Rptr.2d 503].) Similarly, we review the denial of a motion for judgment notwithstanding the verdict to determine whether there is any substantial evidence supporting the jury's verdict. (*Ibid.*)

■ In this case, however, the primary question is whether CUSA owed a duty of care to protect CRTC's employees from exposure to benzene. The existence and scope of such a duty is an issue of law to be determined on a case-by-case basis, although the facts giving rise to a duty must still be proved by the plaintiff. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1162, fn. 4 [60 Cal.Rptr.2d 448, 929 P.2d 1239]; see also *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 [110 Cal.Rptr.2d 370, 28 P.3d 116].) We therefore turn first to the legal issue of duty.

## 2. *CUSA's Duty of Care*

■ Civil Code section 1714 sets forth the general duty of a property owner toward others: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." ■ The application of this provision entails an inquiry as to "whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others . . . ." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561]; see also Rest.2d Torts, § 343.) "This requires persons 'to maintain land in their possession and control in a reasonably safe condition. [Citations.]' (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] . . . .)" (*Alcaraz v. Vece, supra,* 14 Cal.4th at p. 1156.)

■ An exception to the statutory rule of liability for failure to use ordinary care in the management of one's property requires clear support in

public policy. (*Rowland v. Christian, supra,* 69 Cal.2d at p. 112.) In determining whether public policy requires a departure from the general rule of Civil Code section 1714, courts balance a number of factors, including the foreseeability of the type of harm suffered by the plaintiff, the degree of certainty that the plaintiff suffered injury, the connection between the defendant's conduct and the injury suffered, the moral blame or social utility attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113.) The purpose of the plaintiff's presence on the property, while not determinative, must be considered along with other circumstances. (*Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 675 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Courts have applied these factors not only to decide whether to depart from Civil Code section 1714 but to define the scope of the landowner's duty. (See, e.g., *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 820 [59 Cal.Rptr.2d 756, 927 P.2d 1260]; *Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 675, fn. 5.)

In this case CUSA argues that the harm was neither foreseeable nor closely connected to CUSA's conduct because CUSA lacked knowledge of and control over the unsafe conditions at CRTC. Plaintiffs, on the other hand, maintain that even an out-of-possession landowner may be liable if it had *constructive* knowledge of the danger. Plaintiffs appear to assume that if a danger is created by any source, and an inspection of the premises would have revealed the danger, then the property owner should have known of the danger and therefore is liable to any injured party. We do not believe the issue can be resolved by such a simple, generic approach. A danger present on land is not the responsibility of the landowner in all circumstances. This case involves hazardous conditions created by the functioning of the business that operated on the premises, not a danger existing on the land independently of the occupant's activity. As one court commented in an analogous context, "Where the operative details of the work are not under the control of the hirer and the dangerous condition causing injury is either created by the independent contractor or is, at least in part, the object of the work of the independent contractor, the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer who may also generally control the premises. In such cases, the hirer is entitled to assume that the independent contractor will perform its responsibilities in a safe manner, taking proper care and precautions to [en]sure the safety of its employees." (*Grahn v. Tosco Corp.* (1997) 58 Cal.App.4th 1373, 1398 [68 Cal.Rptr.2d 806], disapproved on other grounds in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 214 [115 Cal.Rptr.2d

853, 38 P.3d 1081] and *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245 [108 Cal.Rptr.2d 617, 25 P.3d 1096]; see also *Bisetti v. United Refrigeration Corp.* (1985) 174 Cal.App.3d 643, 650 [220 Cal.Rptr. 209] [neither mere presence of tenant's acid vats on property nor their proper use created dangerous condition]; *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 454–455 [82 Cal.Rptr.2d 664] [no liability of site owner where unsafe plank was set in place by the plaintiff's employer and property itself was not dangerous].)

■ "In performing the balancing required by *Rowland*, the Supreme Court recently emphasized that, 'we have placed major importance on the existence of possession and control as a basis of tortious liability for conditions on the land.' " (*Leakes v. Shamoun* (1986) 187 Cal.App.3d 772, 776 [232 Cal.Rptr. 171], quoting *Preston v. Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476].) "Thus, before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition." (*Mata v. Mata* (2003) 105 Cal.App.4th 1121, 1131–1132 [130 Cal.Rptr.2d 141].)

Plaintiffs argue that CUSA must have known of the health risks associated with gasoline testing. CUSA, they point out, as a "sophisticated manufacturer of gasoline products, . . . was well aware of the fact that potentially hazardous benzene exposure occurs during the testing and use of gasoline and that such benzene exposure can result in serious adverse health effects." But plaintiffs point to nothing in the record from which to infer that CUSA knew that CRTC employees were handling gasoline without taking protective measures against benzene exposure. Were we to hold CUSA responsible for all the risks of CRTC's testing, we would in effect be assigning strict liability to CUSA based solely on its status as the premises owner and its knowledge that the business activity conducted there posed special risks to the business's employees. Plaintiffs did not plead such a theory, much less cite factual and legal support for it.

Plaintiffs maintain, however, that *constructive* knowledge is sufficient to impose a duty on CUSA as the property owner. In support of their assertion plaintiffs cite no pertinent authority. Three of the cases on which they rely predate even *Rowland* and are distinguishable on their facts. *Florez v. Groom Development Co.* (1959) 53 Cal.2d 347 [1 Cal.Rptr. 840, 348 P.2d 200] concerned a hazard (an unsafe plank) created by the defendant contractor. The contractor actually knew that the plank was present and should have either removed it or warned workers not to walk on it. It was in these circumstances that the court held that an "invitor, under the law, is required to

protect his invitees not only from dangers created by him, or of which he has actual knowledge, but from those dangers which by the use of reasonable care he should have had knowledge. [Citation.] And lack of actual notice is no defense if there was an opportunity to inspect, and such inspection would have revealed the dangerous situation." (*Id.* at p. 357.) *Conner v. Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263 [41 Cal.Rptr. 728] similarly concerned the duty of a contractor who supervised a project to provide a safe place for the subcontractor's employees. *Dow v. Holly Manufacturing Co.* (1958) 49 Cal.2d 720 [321 P.2d 736] addressed the liability of a general contractor who had supervised the construction of a house, including the subcontractor's installation of a defective heater. Here there is no evidence that CUSA had a right or opportunity to inspect CRTC's facilities during operating hours, or that such an inspection would have revealed unsafe working conditions at CRTC.

*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 462 [76 Cal.Rptr.2d 457], also is of no assistance. That case involved an employer that provided unsafe living conditions for its migrant workers, in violation of a statute requiring employers who provide employee housing to meet certain health and safety standards. A fire resulted, injuring one worker and killing another. In overturning summary judgment for the defendant employer, which owned the land, the appellate court emphasized that the defendant not only was aware of the migrant encampment but exercised "substantial control" over it. (65 Cal.App.4th at p. 463.) Indeed, there was evidence that the defendant *maintained and operated* the employee housing on his property. (*Id.* at p. 465.) Here, by contrast, CUSA did not maintain or operate CRTC, did not employ Laico, and did not exercise any control over the manner in which CRTC conducted its activities on the property. *Reyes v. Kosha* has no application to the facts of this case.

Plaintiffs insist that CUSA was required to "conduct reasonable inspections . . . and to take reasonable actions to remedy or eliminate such dangerous conditions." Their underlying assumption is that CUSA "undoubtedly had the ability to enter the CRTC to inspect the testing of its gasoline." As noted above, however, there is no evidence supporting this factual premise. No lease or other agreement respecting the use of the property was presented to the court or the jury.

Plaintiffs nonetheless argue that the trial court could reasonably have inferred that CUSA had the ability to control and correct dangerous practices at CRTC because it was supplying 70 to 80 percent of the gasoline tested there. No such inference would have been proper here, as there was no evidence, direct or circumstantial, to permit the leap from CUSA as gasoline supplier to CUSA as supervisor over the occupant's activity. Plaintiffs'

characterization of CUSA as a "highly sophisticated manufacturer of gasoline" may have contributed to their position on product liability, but the jury, of course, rejected that allegation.

Plaintiffs also rely on the facts that CUSA owned the property on which CRTC was located and that CUSA was aware of and benefited from the testing conducted by CRTC. We do not infer from these circumstances alone that CUSA retained sufficient control of the property to allow it to enter CRTC's facility to inspect the operations being conducted there; nor was there any evidence that anyone from CUSA actually did conduct such an inspection during the relevant period.[3] There also are no facts from which to infer that if an inspection of the CRTC facility had been permitted and conducted, it would have revealed hazardous testing procedures. That CUSA benefited from the testing of its gasoline is not dispositive; the Supreme Court has expressly disapproved of such a "commercial benefit" test. (*Alcaraz v. Vece, supra*, 14 Cal.4th 1149, 1166 [liability for injury on property controlled by a defendant does not depend upon whether the defendant derived a commercial benefit from the property].)

Plaintiffs also assert that a breach of duty may be found "even though the owner does not control the premises on which an injury occurs." The authority they cite, however, is of no assistance. *Alcaraz v. Vece, supra*, 14 Cal.4th 1149 does not stand for the proposition that liability can exist without control over the site of injury; on the contrary, the Supreme Court stated that a landowner's exercise of control over adjacent property is sufficient to impose a duty of care to visitors even if the defendant did not own or control the *instrumentality* (there, a meter box) of the plaintiff's injury. The defendants' maintenance of the adjacent strip on which the meter box sat, together with their placement of a fence around both their property and the strip, was sufficient to create a triable issue as to whether the defendants had exercised control over the strip and therefore had a duty to protect persons entering the land. (14 Cal.4th at pp. 1170–1171.)

In denying CUSA's motion for nonsuit the trial court relied on *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128 [32 Cal.Rptr.2d 755] and *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705 [52 Cal.Rptr.2d 821]. In *Portillo*

---

[3] Although plaintiffs' counsel attempted to elicit testimony that CUSA engineers were on site, the witness, Michael Long, a long-term employee who had worked with Laico regularly at the CRTC facility, did not see any CUSA engineers there; at most, he agreed with the statement that CRTC purchased CUSA's gasoline for testing. Long occasionally saw engineers from his own employer, Chevron Oronite, look at the engines running. He agreed that it would not be unusual for any of the "client engineers" to see what was going on at the engine labs, but he "wouldn't be aware if any Chevron U.S.A. engineers came." When asked specifically whether it was common for CUSA engineers to come by, he said, "If they did, I wouldn't be aware of that."

this court held that a commercial landlord was negligent in failing to eliminate a dangerous condition—the tenant's dog—from the property. Although the landlord did not have actual knowledge of the dog's dangerous propensities, he would have learned of the danger if he had exercised reasonable care in the inspection of the property before renewing the lease. The landlord knew that the tenant kept a dog on the premises, yet he failed to conduct a sufficient inquiry about the dog's disposition, even though warnings about the dog were posted in the store.

Here, the trial court ruled that CUSA had a "duty of reasonable inspection" of the premises on which CRTC operated, and that it was for the jury to determine the scope of that reasonable inspection and the existence of any violation. CUSA, the court observed, was "something other than an absentee owner of bare land," since it knew at least that CRTC was testing fuel on the property. Consequently, the court reasoned, CUSA had a duty "to satisfy itself that the activities carried on by the tenant, or by whatever the relationship is between CUSA and CRTC, that those activities are reasonably safe and don't present unreasonable hazard to individuals that CUSA knows are coming on to the premises, such as employees of CRTC."

The court's thoughtful comparison to *Portillo* is initially compelling. However, we agree with CUSA that the *Portillo* holding is not applicable to the present case. As noted earlier, there is no evidence defining the relationship between CUSA and CRTC, whether landlord-tenant or otherwise; we therefore are unable to determine when and to what extent CUSA was entitled to enter the property and inspect CRTC's facilities. Nor is there any evidence that if CUSA had conducted an inspection during CRTC's operating hours it would have recognized the hazards in CRTC work procedures. The dangerous condition of which plaintiffs complain was not a removable object, animal, or other "instrumentality" present on the land, but a function of CRTC's own operations. (Cf. *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1129, fn. 7 [63 Cal.Rptr.2d 359] [dangerous condition that injured plaintiff did not exist until created by independent contractor's negligent performance of excavation contract]; *Zamudio v. City and County of San Francisco, supra,* 70 Cal.App.4th at pp. 454–455 [dangerous condition created by activities of plaintiff's employer, not owner of construction site].) And here the injured party was not a visitor to the premises, but an employee engaged in the very practice that posed the danger.

These facts further distinguish the instant case from *Lopez v. Superior Court, supra,* 45 Cal.App.4th 705, the other decision cited by the trial court. There the lessor had a contractual right "at any time" to enter and inspect the premises occupied by its tenant, a produce market. (*Id.* at p. 710.) The injured party was a customer, not an employee, of the tenant. In reversing summary

judgment for the defendant lessor, the appellate court emphasized that the alleged dangerous condition at the produce market was not just the transient presence of the grapes on which the plaintiff had slipped, but the defective finish on the floor, which became slippery when, as was common at the market, it was littered with produce. Because the defendant's summary judgment motion failed to address the questions of either its actual knowledge of the condition of the floor or its constructive knowledge (due to its right to inspect), the defendant did not meet its burden to establish that it had no duty to customers or that it met that duty.

Absent evidence of a danger present at the site when CRTC took possession, and absent evidence of CUSA's knowledge of and ability to control hazardous practices by CRTC employees, we can find no basis for imposing on CUSA a duty to avert the harm suffered by Laico in the course of his employment at CRTC. (Cf. *Zamudio v. City and County of San Francisco*, *supra*, 70 Cal.App.4th at p. 451 [no liability of construction-project owner that did not control details of concrete work from which injury arose]; *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 893–894 [98 Cal.Rptr.2d 576] [*Portillo* inapposite where the defendant did not transfer possession under a lease, property was not used for public admission, the defendant did not know of danger, and the defendant did not possess or control property].)

The *Rowland* factors support our conclusion. Even assuming that illness from benzene exposure was a foreseeable injury, we can find no close connection between that harm and CUSA's conduct. Its role as gasoline supplier, to which plaintiffs repeatedly call our attention, was unrelated to its duty as landowner. Plaintiffs have not shown that a dangerous condition of the property (as opposed to the business operations of the occupant) existed, nor have they demonstrated knowledge of the danger or the ability to discover and remedy it.

We also find no circumstances that would impute moral blame to CUSA. There is no evidence that CUSA intended or deliberately ignored the harm that occurred or that CUSA acted with reckless indifference to the consequences of its failure to inspect CRTC's facility.[4] (Cf. *Martinez v. Bank of*

---

[4] "Moral blame has been applied to describe a defendant's culpability in terms of the defendant's state of mind and the inherently harmful nature of the defendant's acts. To avoid redundancy with the other *Rowland* factors, the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability. [Citation.] Instead, courts have required a higher degree of moral culpability such as where the defendant (1) intended or planned the harmful result [citation]; (2) had actual or constructive knowledge of the harmful consequences of their behavior [citation]; (3) acted in bad faith or with a reckless indifference to the results of their conduct [citations]; or (4) engaged in inherently harmful acts [citation]." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196].)

*America, supra,* 82 Cal.App.4th at p. 896 [no moral blame where owner lacked knowledge of and control over vicious dogs on property].) Plaintiffs assert that CUSA had an obligation to "ensure the elimination of dangerous conditions resulting in hazardous benzene exposures, e.g., ceasing all sales and testing of its gasoline until the CRTC corrected the dangerous conditions." However, the premises were made available to CRTC for an industrial purpose; the hazards were those of CRTC's business, not the land itself, and the danger was to CRTC's employees, not public visitors. In these circumstances, no moral blame should be attached to CUSA's failure to eliminate the practices that caused Laico's condition.

■ Finally, while the policy favoring the prevention of harm to workers is strong, the burden on CUSA would be significant, particularly since there is an insufficient connection between its conduct as a landowner and Laico's illness. To require CUSA essentially to monitor CRTC's operations and disallow gasoline testing without proof of CRTC's compliance with workplace safety standards would create an unrealistic and onerous financial burden which would not serve society's interests in obtaining efficient, high-quality fuel. (Cf. *Resolution Trust Corp. v. Rossmoor Corp.* (1995) 34 Cal.App.4th 93, 103 [40 Cal.Rptr.2d 328] [unreasonable to require property owner to refuse to rent to gas station as means of avoiding damage, and unreasonable for society, which depends on gas stations]; see also *Bisetti v. United Refrigeration Corp., supra,* 174 Cal.App.3d at p. 650 [forcing landlord to eliminate acid vats or evict tenant would inhibit tenant's metal-stripping business and severely limit leasing of property for that purpose].) CRTC already had an obligation to provide insurance for just this kind of risk. If society is "reluctan[t] to impose unrealistic financial burdens on property owners conducting legitimate business enterprises on their premises" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 766 [107 Cal.Rptr.2d 617, 23 P.3d 1143]), its reluctance should be all the greater when the property owner assumes no role except to allow *another* entity to operate on the premises. The property owner should not be deemed an additional insurer of workplace safety when the risks are unrelated to conditions of the property itself.

■ Indeed, we cannot avoid the conclusion that to impose liability on CUSA would contravene the policies expressed in *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*), *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), and *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*). In *Privette,* our Supreme Court held that employees of an independent contractor may not recover from a property owner on a theory of "peculiar risk" for injuries covered by workers' compensation. The "peculiar risk" doctrine "permits parties injured by an independent contractor's inherently dangerous work to seek tort

damages from the independent contractor's hirer." (*Sheeler v. Greystone Homes, Inc.* (2003) 113 Cal.App.4th 908, 912 [6 Cal.Rptr.3d 683].) The doctrine ensures compensation for injuries caused by contracted work, yet allows the hirer (e.g., a property owner) to obtain equitable indemnity from the independent contractor responsible for the injury. (*Privette, supra,* 5 Cal.4th at p. 701.) But when the injured party is an employee of the independent contractor, the workers' compensation system ensures compensation for the injury while spreading the risk of loss created by the performance of dangerous work "to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Ibid.*) Thus, under *Privette,* an independent contractor's employee who is entitled to workers' compensation for injuries resulting from inherently dangerous work may not recover tort damages from the person who hired the contractor and did not independently cause the injuries.

In *Toland,* the Supreme Court clarified that *Privette* bars peculiar risk claims by an independent contractor's employees against the hirer, whether those claims are premised on vicarious or direct liability. The hirer has *"no* obligation to specify the precautions an independent hired contractor should take for the safety of *the contractor's employees,"* as opposed to the safety of neighboring property owners or innocent bystanders. (*Toland, supra,* 18 Cal.4th at p. 267.)

In *Hooker,* the action was based on negligent exercise of retained control over a construction site, resulting in the death of a crane operator employed by the construction contractor. On that occasion the Supreme Court held that the hirer's mere *ability* to retain control over safety conditions at a work site was not enough to violate any duty owed to the employee of the contractor. The hirer, the California Department of Transportation (Caltrans), was liable only if it had retained control over the contractor's job site *and* had exercised that control in a manner that *affirmatively contributed* to the employee's injury. Under such conditions the hirer's liability would not be essentially vicarious or derivative of the independent contractor's act or omission, but would be *"direct* in a much stronger sense of that term." (*Hooker, supra,* 27 Cal.4th at p. 212.) Furthermore, in a "retained control" case the rationale underlying the peculiar risk doctrine—to spread the risk to the hirer through the contract price—is inapplicable, because the contract price cannot reflect the cost of injuries attributable to the hirer's affirmative conduct. (*Id.* at pp. 212–213.) Accordingly, " '[the hirer] owes no duty of care to [the contractor's employee] to prevent or correct unsafe procedures or practices to which the [hirer] did not contribute by direction, induced reliance, or other affirmative conduct.' " (*Id.* at p. 209, quoting *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, 39 [103 Cal.Rptr.2d 594].) " 'The fairness rationale at the core of *Privette* and *Toland* applies equally to

preclude imposition of liability on a hirer for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, where such liability would exceed that imposed on the injured plaintiff's immediate employer, who created the hazard.' " (*Hooker, supra,* 27 Cal.4th at p. 211, quoting *Kinney v. CSB Construction, Inc., supra,* 87 Cal.App.4th at p. 36.)

Plaintiffs contend that the holdings of *Privette, Toland,* and *Hooker* are inapposite because CRTC did not function as an independent contractor. Plaintiffs also point out that in those cases the injured employee had not asserted premises liability against a property owner based on the owner's independent negligence in failing to provide and maintain a safe work site. Here, plaintiffs argue, they did claim a duty of CUSA as premises owner "to provide a reasonably safe place for people . . . to work" by eliminating known dangers and taking steps to discover hidden dangers.

We agree with plaintiffs that CRTC was not functioning as an independent contractor, as it was not hired by CUSA. The relationship between the two entities thus does not evoke the policy reasons underlying the peculiar risk doctrine—that is, to spread the risk of loss to one who benefits from the work by including the cost of workers' compensation insurance in the contract price. (See *Privette, supra,* 5 Cal.4th at p. 701.) Nevertheless, we find sufficient similarity in the plaintiffs' theory of the case that *Privette, Toland,* and *Hooker* provide a useful analogy to the issues presented here. As in *Privette,* Laico was engaged in an activity that posed a special risk of harm, and his injury "involve[d] an 'operative detail of the work.' " (*Privette, supra,* 5 Cal.4th at p. 696.) His injuries arose out of his employment by CRTC and were subject to workers' compensation coverage.[5] In these circumstances, even though there is no evidence of a hirer-contractor relationship between CUSA and CRTC, we believe it would be "illogical and unfair" to impose liability on CUSA for an injury attributable to CRTC, whose liability is limited by workers' compensation insurance. (Cf. *Toland, supra,* 18 Cal.4th at pp. 267, 270.)

 Common to both the present case and *Hooker* is the lack of control over safety conditions at the work site. There is no evidence that CUSA assumed responsibility for those conditions. One of the principles underlying the peculiar risk doctrine is that "the ultimate responsibility for the harm caused by the peculiar risk of the work done is borne by the individual or entity at fault for the injury." (*Privette, supra,* 5 Cal.4th at p. 701.) CUSA's mere failure to intervene in CRTC's testing methods or to demand that CRTC

---

[5] A workers' compensation proceeding was pending at the time of trial, but the details are not revealed in the record.

employ safer work procedures cannot be the basis of its liability for Laico's work-related injury. Furthermore, even if CUSA did, as plaintiffs suggest, retain control over the testing site, there is no evidence that it exercised that control in a manner that affirmatively contributed to Laico's injury. Indeed, it is CUSA's *failure* to exercise control, not a negligent exercise of control, that is at the heart of plaintiffs' case.[6]

 The lack of such control militates against imposing liability on CUSA, since one of the policies underlying *Privette* and its progeny is to avoid burdening the party that did not cause the injury. That CUSA was not a general contractor is a meaningless distinction in this context; the Supreme Court has made it clear that its holdings are applicable whether the hirer is a general contractor or a landowner. (See, e.g., *Toland, supra,* 18 Cal.4th at p. 270.)

While seeking to avoid any comparison with *Privette, Toland,* or *Hooker,* plaintiffs nonetheless suggest that CUSA should be held liable because it "undoubtedly" had "the ability to control and correct any dangerous conditions resulting from the testing of its gasoline." "Indeed," plaintiffs continue, CUSA in fact "retained the ultimate control necessary to ensure the elimination of dangerous conditions resulting in hazardous benzene exposures." Plaintiffs place great emphasis on the benefit CUSA was obtaining from the testing of its gasoline by CRTC. In plaintiffs' words, "Indeed, the CRTC's sole reason for being was to test the gasoline of [CUSA] and its competitors for the benefit of [CUSA], and the CRTC had no clients other than [CUSA]." Plaintiffs also would assign liability to CUSA for failing to require CRTC to take special precautions to protect workers from the special risk of injury from benzene exposure. Thus, although plaintiffs insist that CUSA was independently negligent as the property owner, the evidence they provide again relates to CUSA's role as "sophisticated manufacturer" and supplier of gasoline products rather than its conduct as landowner.

 Plaintiffs' insistence that because of CUSA's sophistication and the benefit it obtained from the testing it *could have*—and therefore should have—eliminated the dangerous conditions at CRTC is reminiscent of the theory endorsed by the appellate court in *Grahn v. Tosco Corp., supra,* 58 Cal.App.4th 1373, 1393, a theory the Supreme Court rejected in *Hooker.*

---

[6] Plaintiffs' cause of action for premises liability centered around the allegations that CUSA and the other defendants owned and controlled the premises but had "failed to maintain said premises in [a] reasonably safe condition," and that Laico was exposed to benzene and developed "severe injuries and disease" as a result of the "hazardous and dangerous condition" of the premises. In his argument to the jury plaintiffs' counsel emphasized that CUSA knew CRTC was testing CUSA gasoline and that no one had warned Laico about the effects of gasoline spills.

(*Hooker, supra,* 27 Cal.4th at p. 209.) Liability is created not by the hirer's mere *ability* to exercise control over safety conditions but by the hirer's affirmative contribution to the injury through the actual exercise of its retained control. (*Id.* at p. 210; *Sheeler v. Greystone Homes, Inc., supra,* 113 Cal.App.4th at p. 922 [no recovery by subcontractor's employee on premises-liability theory unless hirer had control of dangerous condition and affirmatively contributed to the injury].) Thus, even assuming that CUSA retained the *right and ability* to control safety conditions at CRTC, we find no evidence supporting a conclusion that CUSA exercised that control, much less that it did so in a way that affirmatively contributed to Laico's exposure and resulting illness. Nor is there any evidence of an unfulfilled promise by CUSA to assume responsibility for CRTC employees' safety on the job. The proposition that a property owner "should" retain control over a work site occupied by another also finds no support.

### 3. *Conclusion*

In summary, we cannot find a basis for finding premises liability on the facts of this case. Plaintiffs have not shown the existence of a dangerous condition of land owned by CUSA or under its control; instead, the danger consisted of hazardous conduct by the occupant of that land through its employees. Plaintiffs further failed to establish CUSA's knowledge of the danger, the right to inspect, or the ability to discover and remedy hazards of the workplace. CUSA's duty of care as a landowner did not encompass a duty to oversee the testing performed by the premises occupant, CRTC. CUSA is therefore not responsible for the injury caused by a hazard arising solely from Laico's performance of his duties for CRTC. Absent evidence of a preexisting hazard on the property or any independent contribution to Laico's injuries, the imposition of duty on CUSA amounted to an assignment of vicarious or derivative liability for acts or omissions associated with Laico's employment at CRTC, contrary to the policies expressed in *Privette* and its progeny.[7] (Cf. *Toland, supra,* 18 Cal.4th at p. 265.) Because CUSA was entitled to nonsuit on the issue of duty, it is unnecessary to address the sufficiency of the evidence of breach and causation or the justification for a new trial on the apportionment of fault.

---

[7] The jurors were instructed not to consider whether a responsible entity other than CUSA would be required to pay Laico's damages; yet they were also told that Laico was not permitted to seek recovery from anyone except CUSA.

### Disposition

The judgment is reversed. The trial court is directed to enter a new judgment in favor of CUSA. Costs on appeal are awarded to CUSA.

Rushing, P. J., and Premo, J., concurred.