Filed 7/12/16  Rogers v. Ability First CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROBERT ROGERS, a Minor, etc., | B264217 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC509313) |
| v. | |
| ABILITY FIRST, | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendant and Respondent. | [No change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on June 15, 2016, be modified as follows.

On page 3, delete the second sentence in the first full paragraph reading:

"While walking back to Ability's facility, Robert broke into a foot race with other Ability attendees to reach a gate in a chain link fence at the entrance to Ability's grounds."

And insert the following sentence in its place:

"While walking back to Ability's facility, Robert reached a gate in a chain link fence at the entrance to Ability's grounds before the others."

On page 3, delete footnote 1.

This modification effects no change in the judgment.

The petition for rehearing filed by Appellant on June 30, 2016 is denied.

_____

BIGELOW, P. J.               RUBIN, J.               FLIER, J.

Filed 6/15/16  Rodgers v. Ability First CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROBERT ROGERS, a Minor, etc., | B264217 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC509313) |
| v. | |
| ABILITY FIRST, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gregory Keosian, Judge.  Affirmed.

Irving Meyer for Plaintiff and Appellant.

Berman Berman Berman Schneider & Lowary, Mark Lowary and Howard Smith for Defendant and Respondent.

_____

Plaintiff and appellant Robert Rogers, a minor, filed an action for personal injury damages against defendant and respondent Ability First (Ability), an organization offering special education and other disability programs, after he was hit in the face by a swinging gate at an entryway to Ability's facility in Pasadena.  The trial court granted Ability's motion for summary judgment (MSJ).  We affirm the ensuing final judgment in favor of Ability.

## FACTS

### *Background*

Robert is diagnosed with autism.  In May 2011, Robert participated in programs at Ability's facility in Pasadena for youths with developmental and other disabilities to teach them life skills and improved social skills.  According to the deposition testimony of Robert's mother, Eva Graham, which was submitted by Ability in support of its MSJ, Robert was "probably one of the higher functioning kids at his age level" at Ability, and did not require any special accommodations at Ability.  Further, Ms. Graham's deposition testimony showed she understood that Ability did not provide one-on-one supervision for its attendees, and that she had been advised that Ability could not accept Robert into its programs if he required one-on-one supervision.  Accordingly, Ms. Graham had arranged for Robert's physician to certify to Ability that Robert did not require one-on-one supervision, and that the supervision offered at Ability was sufficient to meet Robert's needs.

On May 13, 2010, Robert's grandmother, Janet Graham, who was "absolutely" acting with the authority of Robert's mother, Eva Graham, signed a "Consent to Travel Offsite" form to allow Robert to leave Ability's facility "under the supervision of an adult" to go on "Local Neighborhood Excursions," including trips to such places as parks and retail establishments.  On its face, the consent form covered a period of time "between the dates of January 1, 2010 and December 31, 2011."  The consent form contained the following release language:

"I understand that the mode of transportation will be walking and hereby represent that my child is fully capable of participating in such trips

2

and that I have informed [Ability] of any relevant health or behavioral concerns evidenced by my child of which I am aware. [¶] I hereby release, discharge, agree not to sue and waive any and all causes of action against [Ability] . . . from any and all liability or expense . . . for any and all injury or damage that may arise during, or develop in the future, as a result of my child's participation in the trips described above, whether caused by the negligence of [Ability] or otherwise."

On May 18, 2011, Ability took Robert on a "walking field trip" to a nearby Target store. While walking back to Ability's facility, Robert broke into a foot race with other Ability attendees to reach a gate in a chain link fence at an entrance to Ability's grounds. Just as Robert reached the gate, it suddenly swung outward and hit him in the face, causing him to lose a piece of a front tooth. The gate swung outward when another Ability participant, who was running in basketball drills on Ability's grounds on the inside the chain link fence, ran into the gate, pushing it outwards toward Robert, who was on the outside of the chain link fence.[1]

---

[1]     We note that neither Ability nor Robert tried to show the facts regarding the gate accident with direct evidence in their respective MSJ papers. In other words, there was no deposition testimony or declaration from an actual eyewitness to the accident at Ability's gate. Ability's MSJ cited deposition testimony from Eva Graham, Robert's mother, but she was relaying a hearsay version of events that she had heard from Ability staffers at the time of the accident. Further, Ability offered a copy of a written "case note" report prepared by Ability staffers at around the time of Robert's accident. Robert's opposition to the MSJ did not object to any of this evidence, and he too cited the same forms of evidence. Thus, there is no challenge that the MSJ evidence as to the accident was properly admitted and considered by the trial court. Accordingly, we find the facts concerning the accident, as summarized above, are not truly disputed in any material measure. It is the evaluation of the facts that is in question.

*The Civil Action*

In 2013, Robert filed a complaint for personal injury damages against Ability.[2] His Judicial Council form complaint alleged a cause of actions for premises liability and negligence. Ability answered the complaint, generally denying the claims in Robert's complaint and asserting affirmative defenses, including the release noted above.

In November 2014, Ability filed a MSJ or, in the alternative, motion for summary adjudication of each of Robert's causes of action, based on evidence establishing the facts summarized above. As to both motions, Ability argued that Robert waived any right to sue by virtue of the release in the consent form that was signed for the field trip that he had been on at the time he was injured. Further, Ability argued that it had no duty to prevent the accident that injured Robert because the accident was "entirely unforeseeable." Further, Ability argued there was "no causation between anything Ability . . . did or did not do and the resulting harm."

In January 2015, Robert filed an opposition, supported for the most part with argument that Ability failed to properly supervise children participating in its services at its facility, and failed to provide a safe environment for those children. Further, Robert submitted declarations from his mother, Eva Graham, and grandmother, Janet Graham, both of whom stated that they had extensive experience watching Robert and other children with disabilities similar to his, and that, in their opinion, Ability should have "anticipated" the type of accident that injured Robert, and should have done more to assure that the accident did not happen. Robert's opposition did not address the predominant point argued in Ability's MSJ, namely, the release. Indeed, Robert's opposition did not address the release; there is not a single word in his opposition even acknowledging the release.

Ability thereafter filed a reply, and, in addition, filed objections to statements in Eva Graham's declaration and Janet Graham's declaration offered in support of Robert's opposition to Ability's MSJ. Essentially, Ability objected that the declarants were not

---

[2] Robert filed his action by his guardian ad litem, Eva Graham, who, as noted above, is his mother.

4

shown to be qualified to offer opinions on the type of supervision by Ability staff or the type of physical safety features which should have been provided at Ability's facility.

On February 10, 2015, the parties argued the merits of the MSJ to the trial court, and the court took the matter under submission. On March 5, 2015, the court issued and served a minute order indicating that it had signed and entered an order on March 3, 2015, granting Ability's MSJ. The court's minute order set forth rulings granting a number of Ability's objections to Eva Graham's declaration and Janet Graham's declaration offered in support of Robert's opposition to Ability's MSJ. Summarized, the court ruled that the declarants were not competent to offer expert opinion testimony on the type of supervision offered at Ability's Pasadena facility or the physical nature of its facilities.

With regard to the merits of Ability's MSJ, the trial court's order of March 3, 2015 shows that the court declined to grant the motion insofar as it was based on the release.[3] Here, the court found that release did not clearly and unambiguously release Ability from liability for an injury claim alleging *a dangerous condition of its property*, for example, a lack of padding on the gate. We interpret this to mean that the release did not preclude Robert from possibly prevailing on his cause of action for premises liability. In short, the court implicitly ruled that, because Robert had one viable cause of action, the release did not operate as a complete defense to his lawsuit.

The trial court granted Ability's MSJ based on a ruling as to Robert's negligence cause of action that Ability had "established that there is no dispute that the incident was not foreseeable or caused by [Ability]'s negligence . . . ." This language could be read to mean either that Ability had *no duty* to prevent Robert's accident, or that it *did not breach* a recognized duty owed to Robert. Here, the court correctly noted that the undisputed evidence established that an Ability attendee hit the gate while running drills, pushing the

---

[3] Robert did not include a copy of the trial court's March 3, 2015 order in his appellant's appendix on appeal. We have the order before us because it was included in a respondent's appendix on appeal submitted by Ability.

gate outward and causing it to strike Robert. Because the court cited two "duty" cases in the context of this part of its ruling (see *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 158; and *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 129),[4] we interpret the court's ruling to be that Ability had *no duty* to protect Robert against injury from the type of accident that occurred.

The trial court next ruled that the undisputed evidence also established a "lack of causation." Here, the court concluded that Robert had not proffered evidence that would support a finding that Ability's "conduct or failure to act caused [Robert's] injury."

As to Robert's premises liability cause of action, the trial court ruled that the undisputed evidence court established that Ability had no notice of problems or concerns with the gate, that is, that Ability "did not have notice of a dangerous condition" on its property.

On March 25, 2015, the trial court signed and entered judgment in favor of Ability.

Robert filed a timely notice of appeal.

## DISCUSSION

### I. The Motion for Summary Judgment Was Properly Granted

#### A. Standard of Review

"We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438 (*Weber*).) A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met his burden of

---

[4]     *Margaret W.* and *Isaacs* both examined the issue of whether a property owner had a duty of care to protect a person on the owner's property against a criminal attack by a third-party.

showing that a cause of action has no merit if he has shown that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); see *Weber, supra*, 143 Cal.App.4th at p. 1437.)

"In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) In some instances, however, "evidence may be so lacking in probative value that it fails to raise any triable issue." (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 795.)

## B. Negligence Cause of Action

Robert contends "[t]here is enough disputed material evidence so that a jury should be the one to rule on whether [his] injuries were foreseeable." However, he does not actually point to any dispute in the evidence in the record. (See footnote 1, *ante*.) Instead, in different parts of the text of his opening brief, Robert argues that Ability is a school that provides services to special needs students, and that this comes along with a duty to supervise such special needs students as is adequate to address their needs. Here, Robert discusses *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320 at pages 1327-1328. Beyond this, Robert offers arguments that include propositions such as these: the staffer who took Robert and the other Ability attendees on the walking field trip to the Target store should have opened the gate to Ability's grounds herself, and not allowed Robert to go ahead to open the gate. Or, the staffer, who could see ongoing sports drills on the other side of the gate, should have used an alternate entrance to Ability's grounds that provided a clearer and safer path onto the grounds. We understand Robert's opening brief to challenge the trial court's ruling that Ability did not have a duty of care to protect Robert against injury from the type of accident that occurred. So understood, we agree with his argument.

7

The existence of a alleged duty of care underpinning a claim for negligence is an issue of law that must be determined by a court on a case-by-case basis, depending upon a number of factors such as the forseeability of the type of harm suffered by the plaintiff, the connection between the defendant's conduct and the injury suffered, the moral blame or social utility attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing the claimed duty, and the availability and cost of insurance for the risk involved. (See, e.g., *Laico v. Chevron U.S.A., Inc*. (2004) 123 Cal.App.4th 649, 660.) We agree with Robert that a school providing services to special needs students has a duty to exercise due care in supervising such students as is adequate to address their needs. (*Jennifer C. v. Los Angeles Unified School Dist*., *supra*, 168 Cal.App.4th at pp. 1327-1328.) In ruling that Ability had a duty to exercise due care in supervising Robert (and all of its students), we find the trial court erred in examining the role that foreseeability plays in Robert's case. It cannot be doubted that it is foreseeable that a special needs student who is not supervised with due care may suffer a personal injury. Further, it cannot be doubted that there is a social utility in imposing a duty of due care on persons who supervise special needs students. For these reasons, a duty of care is appropriately recognized.

Where a duty to exercise due care is recognized, the issue of foreseeability is examined differently than it is in the determination of the legal issue of duty in first instance. This difference was explained by the Supreme Court in *Bigbee v. Pacific Tel. & Tel. Co*. (1983) 34 Cal.3d 49 (*Bigbee*). In *Bigbee*, a plaintiff suffered injuries when an intoxicated driver lost control of his car and drove off a roadway and struck a telephone booth in which the plaintiff was standing. In addition to suing the driver, the plaintiff sued the telephone company for negligence based on allegation that the company placed the telephone booth too close to the roadway. The parties in *Bigbee* did not dispute that the telephone company had a duty to exercise due care in placing its telephone booths. Further, as in Robert's current case, the facts in *Bigbee* as they involved the telephone company were undisputed. In short, everyone knew what had occurred — namely, where

8

the phone booth had been placed, and how it came to be hit by the driver. And, as in Robert's current case, the trial court granted the defendant's MSJ on the ground that the accident was not foreseeable. In *Bigbee*, the Supreme Court reversed for the following reasons.

"Ordinarily, foreseeability is a question of fact for the jury. [Citation.] It may be decided as a question of law only if, 'under the undisputed facts there is no room for a reasonable difference of opinion.' [Citations.] Accordingly, this court must decide whether foreseeability remains a triable issue in this case. If any triable issue of fact exists, it is error for a trial court to grant a party's [MSJ]. [Citations.]

"[¶] . . . [¶]

"Turning to the merits of this case, the question presented is a relatively simple one. Is there room *for a reasonable difference of opinion* as to whether the risk that a car might crash into the phone booth and injure an individual inside was reasonably foreseeable under the circumstances set forth above?

"[¶] . . . [¶]

"Here, defendants placed a telephone booth . . . in a parking lot 15 feet from the side of a major thoroughfare and near a driveway. Under these circumstances, this court cannot conclude as a matter of law that it was unforeseeable that the booth might be struck by a car and cause serious injury to a person trapped within. A jury could reasonably conclude that this risk was foreseeable. [Citation.] This is particularly true where, as here, there is evidence that a booth at this same location had previously been struck. [Citation.]

"Indeed, in light of the circumstances of modern life, it seems evident *that a jury could reasonably find* that defendants should have foreseen the possibility of the very accident which actually occurred here. Swift traffic on a major thoroughfare late at night is to be expected. Regrettably, so too are intoxicated drivers. [Citation.] Moreover, it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they

9

travel — no matter how straight and level that road may be." (*Bigbee, supra*, 34 Cal.3d at pp. 56-58, italics added.)

We find *Bigbee*'s analysis fits Robert's current case. We conclude that it cannot say that as a matter of law that Robert's injury was unforeseeable. A reasonable jury could find that Robert's injury was foreseeable; a reasonable jury could find that Robert's injury was not foreseeable. As was the situation in *Bigbee*, the facts in Robert's case are susceptible to a difference of opinion on the element of foreseeability. The occurrence of a prior accident at the gate would certainly provide greater weight in support of a finding that an accident was foreseeable, but is not a mandatory element for such a finding.

## II. The Release

Our determination that the trial court erred in finding that Ability had no duty of care underpinning Robert's negligence cause of action does not necessarily compel the reversal of the court's order granting Ability's MSJ. Ability argues summary judgment in its favor should be affirmed because Robert waived his right to sue Ability by virtue of the release executed by his guardian. We agree with Ability's argument, but only in part, specifically with respect to Robert's cause of action for negligence.

The trial court correctly concluded that the release did not defeat Ability's MSJ because the release did not cover Robert's alleged cause of action for premises liability. The release provided for a release from liability for any injury arising "as a result of my child's participation in the [field] trips described [in the release], whether caused by the negligence of [Ability] or otherwise." The language of the release does not speak to a claim about an unsafe condition of Ability's property. This said, the question remains whether the release supports a summary resolution of Robert's cause of action for negligence. We find that it does.

It is well-established in California that an agreement which does not contravene the public interest may release a party from liability arising from the party's negligent acts. (*Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1485.) To be effective, such a release ""must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties."" (*Ibid.*, italics omitted.) A parent or guardian's clear,

10

unambiguous and explicit agreement to release a caretaker from liability for a student's injuries resulting from negligence is valid and enforceable under these principles. (*Hohe v. San Diego Unified Sch. Dist*. (1990) 224 Cal.App.3d 1559, 1563-1564 (*Hohe*) [release executed by a parent to allow student to participate in a hypnosis show for fundraising].) As stated in *Hohe*: "The public as a whole receives the benefit of such waivers so that groups such as Boy and Girl Scouts, Little League, and parent-teacher associations are able to continue without the risks and sometimes overwhelming costs of litigation." (*Id*. at p. 1564.)

"Not every possible specific act of negligence by the defendant must be spelled out in the agreement or discussed by the parties. [Citation.] Where a release of all liability for *any* act of negligence is given, the release applies to any such negligent act, whatever it may have been." (*Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 757.) It is only necessary that the act of negligence which resulted in the injury to the releaser be reason-ably related to the object or purpose for which the release was given. (*Id*. at pp. 756-758.)

Here, the purpose of the consent signed by Robert's grandmother, Janet Graham, with the authorization of his mother, Eva Graham, was to allow Ability to take students on local excursions to such places as retail stores and parks to develop their social and life skills. Disallowing enforcement of the release from liability for negligence during such field trips would undermine those goals, to the detriment of the public interest, including the interests of special needs students who benefit from such programs to develop their social and life skills. The release was plain and clearly expressed the intent of the parties that Robert was allowed to participate in such excursions. There is no disputed fact that he was injured while returning from such an excursion.

Robert offered no argument in the trial court that the release should not be enforced. He has not offered any such argument on appeal. "Where, as here, a clear unambiguous release of all liability for *any* act of negligence has been given, then it is, by definition, 'applicable' to the defendant's negligent act, whatever that act may have been." (*Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 601.) The express

11

release of any negligence liability on the part of Ability provides it with a complete defense to Robert's negligence cause of action. (*Id*. at pp. 597-601.)

## III. Premises Liability Cause of Action

The elements of a cause of action for premises liability are similar to those for negligence: duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*); see Civ. Code, § 1714, subd. (a).) In addition, a plaintiff suing for premises liability has the burden of proving that the owner had actual or constructive knowledge of a dangerous condition in time to correct it, or that the owner was """"able by the exercise of ordinary care to discover the condition."""" (*Ortega, supra*, at p. 1206, quoting *Girvetz v. Boys' Market, Inc*. (1949) 91 Cal.App.2d 827, 829.) The reason for placing this burden of proof on the plaintiff "is that if the burden of proving lack of notice were placed on the owner . . . where the source of the dangerous condition or the length of time it existed cannot be shown, failure to meet the burden would require a finding of liability, effectively rendering the owner an insurer of the safety of those who enter the premises. [Citation.]" (*Ortega*, at p. 1206.)

The trial court correctly resolved Robert's cause of action for premises liability in favor of Ability because the school presented evidence showing that it had never received any information such that it knew of any danger posed by the gate, or that it should have known of any danger posed by the gate, and Robert presented no evidence showing the existence of a disputed fact as to any danger posed by the gate. The fact that a student inopportunely pushed the gate open, striking Robert does not show that the gate was in a defective or unsafe condition.[5]

---

[5] In a half-sentence passage in his opening brief on appeal, Robert argues there was a "lack of proper safeguards to the property, in particular 'foam protective bumpers to go around the metal gate' which is used frequently as an entrance to the school grounds." We take this argument to mean that foam bumpers on gates are a recognized safety feature commonly used at school grounds, and that a jury could find that Ability's property was in a defective and unsafe condition because it lacked such bumpers. The evidence Robert cites in support of this passing argument, specifically a declaration from Eva Graham, Robert's mother, does not show that foam bumpers are "frequently" used at gate entrances to schools, or that such bumpers are a recognized safety feature at gates to

## IV.     Causation

Ability argues that summary judgment in its favor should be affirmed because Robert's opening brief on appeal does not include any argument demonstrating that the trial court erred in finding no causation between any act or omission by Ability and his injury.  Ability cites the long-established rule that a reviewing court may treat an issue that is not addressed in an appellant's opening brief as abandoned.  (He cites, as a case example, *Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 451-452.)

Ability's position is well-taken.  The only way we could reject the trial court's "no causation" ruling would be for us to act as Robert's advocate on appeal.  This would not be fair to Ability, or to the trial court.  Robert filed a reply brief on appeal, but it does not respond to Ability's argument regarding the trial court's causation ruling.  Because Robert has failed to demonstrate error regarding causation, the court's decision to grant Ability's MSJ may be affirmed on that ground as well as the grounds discussed above.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.



BIGELOW, P.J.

We concur:


RUBIN, J.



FLIER, J.

---

school grounds.  Rather, Ms. Graham offered her opinion that Ability should have placed foam bumpers on its gate.  More importantly, the trial court sustained Ability's objections to Ms. Graham's declaration on the ground that her declaration did "not establish her qualifications to testify as a safety expert."  Robert's opening brief on appeal does not challenge the trial court's ruling to exclude his proffered evidence about foam bumpers.