[No. C044063. Third Dist. May 11, 2005.]

RANDALL BARCLAY, Plaintiff and Appellant, v.
JESSE M. LANGE DISTRIBUTOR, INC., Defendant and Respondent.

Counsel

Jones, Clifford, Johnson & Johnson, Steger P. Johnson; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiff and Appellant.

Porter, Scott, Weiberg & Delehant, Russ J. Wunderli, Teri L. Block and Brendan J. Begley for Defendant and Respondent.

Opinion

SIMS, J.—Plaintiff Randall Barclay was injured by an explosion while working for his employer (nonparty Chico Drain Oil), cleaning fuel tanks on land owned by defendant Jesse M. Lange Distributor, Inc. (Lange), which is in the business of storing and selling gasoline to commercial and agricultural customers. The trial court entered summary judgment in favor of Lange under the doctrine of *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*) and its progeny, pursuant to which a nonnegligent property owner is generally not liable for injuries to an employee of an independent contractor hired to perform hazardous work on the property.

On appeal, plaintiff argues summary judgment was improper because Lange could be liable based on Lange's breach of its own statutory, regulatory, and common law nondelegable duties to warn of and minimize hazards on its property.

We shall conclude plaintiff showed Lange may be liable for breach of its regulatory duty to provide fire extinguishers pursuant to the California Fire Code. We shall therefore reverse the judgment entered in favor of Lange.[1]

We need not decide plaintiff's other theories of liability.

FACTUAL AND PROCEDURAL BACKGROUND

I. *The Complaint and Answer*

On June 19, 2001, plaintiff filed a complaint against Lange and others (Northern Lights Mechanical, Paul Oil Company, and Shell Oil Company),

---

[1] On September 21, 2004, pursuant to the parties' stipulation, we dismissed the appeal as to the summary judgment of another defendant, Paul Oil Company. Other defendants are not parties to this appeal.

alleging general negligence and premises liability. The negligence count alleged that, on February 13, 2001, plaintiff was working at Lange's premises in Chico, and was severely burned when a petroleum products tank on the property exploded, causing severe injury to plaintiff. The complaint alleged defendants "negligently and carelessly owned, possessed, operated, designed, constructed, inspected, maintained, contracted, subcontracted, supervised, coordinated, controlled, and had a right to control the cleaning of a petroleum products tank at the aforesaid location, in that they failed to provide adequate safety devices, appliances or appurtenances in or about said site and failed to properly plan and coordinate the work being performed and failed to use and follow proper safety precautions; and that as a direct and proximate result of the negligence of defendants, and each of them, plaintiff was caused to be severely burned when a tank on said property exploded causing plaintiff to sustain serious and severe personal injuries . . . ."

The premises liability count alleged defendants "so negligently and carelessly owned, operated, supervised, cared for, inspected, maintained and controlled a hazardous material storage tank on the aforementioned property so as to cause plaintiff, who was working in the vicinity, to be seriously and severely burned when said tank exploded."

Lange filed an answer, asserting a general denial and several affirmative defenses, including a defense that plaintiff's injury resulted from negligence of his employer, and workers' compensation was his exclusive remedy. (Lab. Code, § 3600 et seq.)

## II. *The Summary Judgment Motion*

On May 2, 2002, Lange filed a motion for summary judgment on the complaint and cross-complaints filed against Lange by other defendants. The motion was based on the doctrine expressed in *Privette v. Superior Court, supra,* 5 Cal.4th 689, and its progeny, barring injured employees of independent contractors from suing nonnegligent property owners who hired the contractors.

Lange's motion did not identify the cause of the explosion that injured plaintiff. Instead, Lange's separate statement of facts asserted as follows:

Lange owned the property on which the above-ground fuel storage tanks were located. Lange entered an oral contract with Paul Oil Company,

pursuant to which Paul Oil Company was to clean and remove the tanks in exchange for ownership of the tanks.[2] Paul Oil Company hired Northern Lights Mechanical to transport the tanks. Northern Lights Mechanical contracted with Chico Drain Oil to assist with the cleaning of the tanks before they were transported. Plaintiff, an employee of Chico Drain Oil, was injured in the scope of his employment in an explosion of a fuel tank on February 13, 2001. He has received workers' compensation benefits. Lange did not direct, control, or supervise the operative details of the work, and did not contribute any advice or equipment.

### III. *The Opposition*

On September 23, 2002, plaintiff filed an opposition to summary judgment. Plaintiff agreed the facts in Lange's separate statement of undisputed facts were undisputed, though plaintiff responded, "Undisputed and irrelevant" to Lange's assertion that it did not direct, control or supervise the operative details of the work.

Plaintiff argued, "the exact cause of the fire and explosion on defendant's property is unknown [citation] and could easily have been caused by defendant's own conduct." Plaintiff also argued the explosion could have been sparked by Northern Lights Mechanical's employees cutting metal pipes that had recently been used to drain fuel from the tanks.

Plaintiff argued he was not making a claim against Lange for vicarious liability under the peculiar risk doctrine as addressed in *Privette, supra,* 5 Cal.4th 689, but instead contended Lange was liable for affirmatively contributing to the injury by Lange's direct negligence in breach of nondelegable duties imposed by various sources,[3] including the 1998 California Fire Code.[4]

---

[2] Lange characterizes itself as the "hirer" of Paul Oil Company. Apparently, there was a dispute in this litigation between Lange and Paul Oil Company as to which of them owned the tanks at the time of the explosion. We need not address the issue.

[3] Plaintiff also asserted defendant breached duties imposed on it by (1) the California Occupational Safety and Health Act (Cal-OSHA); (2) Civil Code section 1714 (responsibility for want of ordinary care in the management of one's property); (3) Labor Code section 7803 (requiring an employer to provide its employees with fire extinguishers); (4) a permit to remove the tanks issued by the Butte County Air Quality Management District; (5) contact with the Butte County Environmental Health Department; and (6) the common law duty regarding ultrahazardous activities.

We shall conclude reversal of the summary judgment is compelled by the Fire Code, and we therefore need not address the other issues.

[4] The California Fire Code is part of the California Code of Regulations, title 24, part 9, the California Building Standards Code. Plaintiff cited the 1998 California Fire Code. The Fire Code provisions cited in this opinion contain identical language in the 1998 version and the current 2001 version of the Fire Code.

Regarding the Fire Code, plaintiff cited the 1998 California Fire Code, section 7904.4.9.2, applicable to petroleum bulk plant facilities,[5] that "[s]uitable portable fire extinguishers with a rating of not less than 20-B shall be located within 75 feet (22860 mm) of those portions of the facility where fires are likely to occur, such as hose connections, pumps and separator tanks."

Plaintiff's expert, retired Cal-OSHA engineer Gerald Fulghum, declared his opinion that Lange, as a petroleum bulk facility, was required by both the California Fire Code and industry custom to have fire extinguishers within 75 feet of the storage tanks where the accident occurred.

Plaintiff also submitted the declaration of a witness to the explosion, William Clugston, who was doing unrelated work as an employee of a different independent contractor. He heard the explosion and immediately went to the containment area where the tanks were located. Clugston said, "I looked for a fire extinguisher but saw no fire extinguishers in the area." He ran approximately 50 yards to the loading dock, where he obtained two fire extinguishers. He lost one due to falling debris as he ran back to the scene. He used the remaining fire extinguisher to contain the fire. He then saw plaintiff, most of whose clothing had burned off. Clugston patted out the fire from the remaining clothing.

Plaintiff's doctor submitted a declaration that, had the flames been extinguished more quickly, plaintiff's injuries would not have been as severe.

IV. *The Reply*

On October 3, 2002, Lange filed a reply, which said nothing about causation or plaintiff's asserted facts. Regarding the Fire Code, Lange simply argued the Fire Code did not require fire extinguishers where a fire would be unlikely to occur, and there was no evidence that a fire extinguisher was *not* located within 75 feet of the tanks.

V. *The Ruling*

On January 6, 2003, the trial court issued a written ruling granting summary judgment in favor of Lange. The trial court said plaintiff failed to

---

[5] The California Fire Code, section 203-B defines a bulk plant as a portion of property where flammable or combustible liquids are received by pipeline or tank vehicle and stored for purposes of distribution by tank vessel, pipeline, tank vehicle, or portable tank or container.

Lange president John Crowston testified in deposition that Lange is a gasoline bulk plant facility, in that it is a facility where fuel trucks refuel and where warehousing of oil takes place for commercial and agricultural customers. Lange stores and sells gasoline.

present evidence that Lange retained control over safety conditions and exercised that control in such a manner that it affirmatively contributed to plaintiff's injuries, which would bring the case within an exception to the *Privette* doctrine stated in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*).

Regarding the Fire Code, the trial court said plaintiff had failed to prove the absence of fire extinguishers, and failed to show applicability of the *Hooker* exception.

On May 8, 2003, after denying plaintiff's motion for a new trial (which plaintiff does not challenge in this appeal), the trial court entered judgment in favor of Lange. Plaintiff appeals.

## DISCUSSION

### I. Standard of Review

■ Lange cites case law for the proposition that the trial court's resolution of disputed factual issues must be affirmed if supported by substantial evidence. However, the cited cases were not summary judgment cases. Summary judgment is proper only if there is no need for resolution of disputed factual issues.

Thus, a motion for summary judgment should be granted if the submitted papers show that "there is no triable issue as to any material fact," and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant meets his burden of showing a cause of action has no merit if he shows that an element of the cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

■ The burden of persuasion remains with the party moving for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 861–862 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true (*id.* at

p. 851), or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' (*Id.* at p. 854.) We review the record and the determination of the trial court de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

" 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644 [69 Cal.Rptr.2d 296].)

## II. *Lange Failed to Show Entitlement to Summary Judgment*

Lange's motion was based on the doctrine of *Privette, supra,* 5 Cal.4th 689, and its progeny, holding a nonnegligent property owner is not liable for injuries to an employee of an independent contractor doing work on the owner's premises.

We shall explain that the flaw in Lange's motion was in assuming that *Privette* and its progeny resolved all potential theories of liability, precluding liability unless the owner actually retained control of the project.

■ However, as we shall explain, none of the cases relied upon by Lange addressed the theory of liability, asserted by plaintiff in this case, of breach of regulatory duties. The cases relied upon by Lange addressed other theories of liability, e.g., peculiar risk (Rest.2d Torts, §§ 413, 416), negligent hiring (Rest.2d Torts, § 411), and retained control (Rest.2d Torts, § 414 (section 414)). Those cases did not address the theory of liability based on breach of regulatory duties (Rest.2d Torts, § 424 (section 424)). A Court of Appeal case has held an owner may be liable if its breach of regulatory duties affirmatively contributes to injury of a contractor's employee. (*Park v. Burlington Northern Santa Fe Railway Co.* (2003) 108 Cal.App.4th 595 [133 Cal.Rptr.2d 757] (*Park*).) We shall conclude Lange has failed adequately to acknowledge or address this theory of liability.

A. Privette *and Its Progeny*

*Privette, supra*, 5 Cal.4th 689, held a property owner was not liable when an employee of a roofing company, hired to install a new roof, fell off a ladder. (*Id.* at p. 692.)

*Privette, supra*, 5 Cal.4th 689, said that, at common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. (*Id.* at p. 693.) The reasoning was that the landowner had no right to control the mode of doing the work, and the contractor was better able to absorb losses by including the cost of safety precautions and insurance in the contract price. (*Ibid.*) Over time, the general rule of nonliability has become subject to many exceptions. (*Ibid.*)

Under one such exception—the peculiar risk doctrine—a person who hires an independent contractor to perform inherently dangerous work can be held liable when the contractor's negligent performance of the work causes injuries to others. (*Privette, supra*, 5 Cal.4th 689, 691, 692.) Imposing such liability without fault advances the policy of compensating injuries caused by inherently dangerous work and encourages the hirer's involvement in safeguarding against injuries. (*Ibid.*)

When the injured person is an employee of the independent contractor, however, the employee recovers under the workers' compensation system. (*Privette, supra*, 5 Cal.4th 689, 691–692.) Additional recovery from the nonnegligent hirer of the contractor advances no additional societal interest and would place contractor's employees in a better position than other employees, who cannot recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment. (*Id.* at pp. 691–692, 700.) "Moreover, to impose vicarious liability for tort damages on a person who hires an independent contractor for specialized work would penalize those individuals who hire experts to perform dangerous work rather than assigning such activity to their own inexperienced employees. [Citations.]" (*Id.* at p. 700.)

*Privette, supra*, 5 Cal.4th 689, concluded "the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (*Id.* at p. 702.)

A footnote in *Privette* said: "The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as 'direct' liability in situations when the person hiring an independent contractor 'fails to provide in the contract that the contractor shall take [special]

precautions.' . . . Irrespective of whether a contract of hire provides that special precautions be taken, a person who employs an independent contractor to perform dangerous work is subject to liability under the doctrine of peculiar risk. [Citation.] Thus, peculiar risk liability is normally premised on the broader rule of vicarious liability for the contractor's negligence." (*Privette, supra,* 5 Cal.4th 689, 695, fn. 2, citing the Restatement Second of Torts.)

*Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), held *Privette, supra,* 5 Cal.4th 689, is not limited to vicarious liability but also applies to bar recovery on a theory that the hirer was directly negligent in failing to take precautions against peculiar risks. (*Toland, supra,* at pp. 264–265.) *Toland* said *Privette* applies regardless of whether recovery is sought under the theory that the hirer who *fails to provide* for special precautions is liable for the contractor's negligence (Rest. 2d Torts, § 413[6]), or the theory that the hirer is liable for the contractor's negligence *in spite of providing* that the contractor take special precautions (Rest. 2d Torts, § 416[7]). Neither section is purely direct nor purely vicarious. (*Toland, supra,* 18 Cal.4th at p. 264.) "[P]eculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (*Id.* at p. 265.)

*Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096], held *Privette* and *Toland* also bar recovery on a theory of negligent hiring (Rest.2d Torts, § 411). (*Camargo, supra,* at p. 1241.)

In *Hooker, supra,* 27 Cal.4th 198, the California Supreme Court reiterated the rationale of *Privette, supra,* 5 Cal.4th 689, " 'extends to cases where the hirer is *directly* negligent in the sense of having failed to take precautions against the peculiar risks involved in the work entrusted to the contractor.' "

---

[6] Section 413 of the Restatement Second of Torts provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer [¶] (a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

[7] Section 416 of the Restatement Second of Torts provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

(*Hooker, supra,* at pp. 209–210.) "[T]he conclusion that a hirer's liability can be characterized as *direct* does not end the inquiry into whether the hirer should be held liable for injuries to a contractor's employees . . . ." (*Id.* at p. 210.)

*Hooker, supra,* 27 Cal.4th 198, (reversing the Court of Appeal) held a trial court properly granted summary judgment in favor of the California Department of Transportation (Caltrans) in an action alleging Caltrans negligently exercised control it had retained over safety conditions at a jobsite to construct an overpass. A crane operator died while handling the crane in a manner to permit traffic to pass. (*Id.* at p. 215.) The plaintiff cited the Caltrans construction manual, which made Caltrans responsible for contractors' compliance with safety regulations. (*Id.* at p. 202.)

*Hooker, supra,* 27 Cal.4th 198 at page 206, cited section 414,[8] which provides that a contractor's hirer who retains control may be liable if his failure to exercise the control with reasonable care causes harm to others for whose safety the hirer owes a duty of care. Caltrans argued "others" did not include contractor's employees. (*Hooker, supra,* at p. 206.) *Hooker* noted *Toland, supra,* 18 Cal.4th 253, and *Camargo v. Tjaarda Dairy, supra,* 25 Cal.4th 1235, had cited the tentative draft of the Restatement Second of Torts in concluding that liability to "others" did not include contractors' employees for purposes of sections 411, 413, and 416 of the Restatement Second of Torts, but *Hooker* said there was a split of authority from sister states as to whether this same conclusion applied to section 414. (*Hooker, supra,* at p. 206.) *Hooker* summarized the case law on both sides of the issue and then apparently accepted that section 414 may apply to contractor's employees, though in limited circumstances. (*Hooker, supra,* at pp. 206–210.) Thus, *Hooker* agreed with a Court of Appeal decision that said, " 'Insofar as section 414 might permit the imposition of liability on a general contractor for mere failure to intervene in a subcontractor's working methods or procedures, without evidence that the general contractor affirmatively contributed to the employment of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor.' [Citation.]" (*Id.* at p. 209.)

■ *Hooker, supra,* 27 Cal.4th 198, concluded, "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but . . . a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained

---

[8] Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

control *affirmatively contributed* to the employee's injuries."[9] (*Id.* at p. 202.) Imposing liability when the hirer's conduct has affirmatively contributed to the injuries of the contractor's employee is consistent with *Privette* and its progeny, because the hirer's liability in such a case "is *not* ' "in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor." ' [Citation.] To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term." (*Hooker, supra,* at pp. 211–212.) In a footnote, *Hooker* said, "[s]uch affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Id.* at p. 212, fn. 3.)

■ *Hooker, supra,* 27 Cal.4th 198, added that, while the cost of workers' compensation insurance coverage is likely to have been calculated into the contract price paid by the hirer, the contract price could not have reflected the cost of injuries that are attributable to the hirer's affirmative conduct. (*Id.* at pp. 212–213.) "[W]hen affirmative conduct by the hirer of a contractor is a proximate cause contributing to the injuries of an employee of a contractor, the employee should not be precluded from suing the hirer." (*Id.* at p. 214.)

Applying these principles to the case before it, *Hooker, supra,* 27 Cal.4th 198, concluded the plaintiff failed to raise a triable issue as to whether the defendant actually exercised the retained control so as to contribute affirmatively to the injury. (*Id.* at p. 215.)

Thus, *Hooker* decided only one theory of liability—retained control under section 414. (*Hooker, supra,* 27 Cal.4th 198, 201.) It did not foreclose liability based on other theories.

■ *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 [115 Cal.Rptr.2d 868, 38 P.3d 1094], held a hirer may be liable to an employee of an independent contractor if the hirer's provision of unsafe equipment affirmatively contributes to the employee's injury. It is the hirer's own negligence, not that of the contractor, that renders the hirer liable. (*Id.* at p. 225.)

---

[9] *Hooker, supra,* 27 Cal.4th 198, also indicated liability cannot be imposed based on a mere failure to require a subcontractor to take safety precautions, where the defendant's failure is not shown to have " 'affirmatively contributed to the creation or persistence of the hazard causing the plaintiff's injuries.' " (*Id.* at p. 211.) Here, plaintiff's focus is on arguing that Lange contributed to the hazard, not that Lange directly caused the explosion.

Thus, none of the case law relied upon by Lange addressed the theory of breach of regulatory duty.

### B. *Breach of Regulatory Duty*

■ At issue in this case is the theory of liability expressed in section 424,[10] which states that where specific precautions are required by statute or regulation for the safety of "others," the party upon whom the duty is imposed is subject to liability to "the others for whose protection the duty is imposed."[11]

Here, plaintiff claims Lange violated the Fire Code's requirement to provide fire extinguishers on its premises. Lange does not dispute that plaintiff is a person within the Fire Code's protection.

■ We agree with *Park, supra*, 108 Cal.App.4th 595, which implicitly indicated employees of contractors may be "others" for the purposes of section 424, subject to the limitation (similar to *Hooker*) that the hirer's conduct must have affirmatively contributed to the employee's injuries.[12]

*Park, supra*, 108 Cal.App.4th 595, involved a truck driver for a hazardous waste disposal company, who was injured when a plastic drum containing used batteries exploded. (*Id.* at pp. 598–599.) The plaintiff sued his employer (the contractor) and the railroad company that hired the contractor to dispose of the batteries. Before the explosion, another employee of the contractor had picked up the batteries, which were packed in plastic totes, signed a hazardous waste manifest on behalf of the railroad company, and repacked the batteries in plastic drums without removing the leads. A jury found the railroad company 33 percent responsible, but the entire burden fell on the railroad company, because the liability of the plaintiff's employer was limited to workers' compensation. (*Ibid.*)

The Fourth Appellate District in *Park, supra*, 108 Cal.App.4th 595, reversed the judgment, holding the railroad company was not liable. Although the statutory and regulatory duties imposed on the generator of hazardous

---

[10] Section 424 provides: "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

[11] Plaintiff did not cite section 424 in the trial court but did quote the jury instruction based on it, former BAJI No. 13.22. Lange does not claim that plaintiff is precluded from invoking section 424 on appeal by his failure to cite it in the trial court. Lange does not address section 424 in its respondent's brief on appeal.

[12] *Park, supra*, 108 Cal.App.4th 595, was issued on May 9, 2003, after the trial court ruled in this case.

waste (42 U.S.C. § 6901 et seq.; 40 C.F.R. § 261 et seq. (2002); Health & Saf. Code, § 25100 et seq.; Cal. Code Regs., tit. 22, § 66262.30) are nondelegable, the generator of such waste is not liable to the employee of a subcontractor employed to dispose of such waste unless the generator's conduct affirmatively contributed to the employee's injuries. (*Park, supra,* at pp. 606–610.) The undisputed evidence demonstrated that the railroad's packaging of the spent batteries posed no danger, and the disposal company employee's repackaging of the batteries was a superseding cause of the injury. (*Id.* at p. 611.) Even if the disposal company's employee was authorized by the railroad to sign hazardous waste manifests, his signing did not contribute to the truck driver's injury, so that the railroad company could not be held liable on an agency theory. (*Id.* at pp. 611–614.)

█ Of particular interest to us in this appeal, the plaintiff in *Park, supra,* 108 Cal.App.4th 595, argued (citing section 424 among other authorities) that the defendant, as a generator of hazardous waste, had nondelegable duties under federal and state statutes and regulations governing hazardous waste disposal. (*Park,* at p. 608.) *Park* cited *Maloney v. Rath* (1968) 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513] (*Maloney*), which held the Vehicle Code's requirement that a car be equipped with adequate brakes imposed a nondelegable duty on the car owner. *Park, supra,* 108 Cal.App.4th at page 608, noted *Maloney* said: " 'Unlike strict liability, a nondelegable duty operates, not as a substitute for liability based on negligence, but to assure that when a negligently caused harm occurs, the injured party will be compensated by the person whose activity caused the harm and who may therefore properly be held liable for the negligence of his agent, whether his agent was an employee or an independent contractor.' [Citation.] [*Maloney*] cited the Restatement Second of Torts, sections 423 and 424." (*Park, supra,* 108 Cal.App.4th at p. 608.)

*Park, supra,* 108 Cal.App.4th 595, agreed the hazardous waste disposal statutes and regulations imposed nondelegable duties on the generator of hazardous waste to dispose of the waste properly. (*Id.* at p. 609.) However, that did not mean that the railroad was liable to the plaintiff, an employee of the contractor, for injuries caused by the contractor's negligence.[13] (*Id.* at p. 609.)

█ *Park, supra,* 108 Cal.App.4th 595 at page 609, noted *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032 [43 Cal.Rptr.2d 158] held the doctrine of nondelegable duties survived *Privette, supra,* 5 Cal.4th 689, and nondelegable duties may arise when a statute provides specific precautions to ensure the safety of others. However, *Park* noted *Maloney, supra,* 69 Cal.2d

---

[13] *Park* said in a footnote that the case was not tried on a nondelegable duty theory, but rather on a theory that the railroad itself was negligent. (*Park, supra,* 108 Cal.App.4th 595, 609, fn. 12.)

442, and *Felmlee* were decided before *Hooker, supra,* 27 Cal.4th 198, and, "Under *Hooker*, a retained control over safety conditions at the worksite does not support liability unless plaintiff proves that the exercise of such retained control affirmatively contributed to the employee's injuries. [Citation.]" (*Park, supra,* 108 Cal.App.4th at p. 610.)

*Park, supra,* 108 Cal.App.4th 595, concluded, "although the duties imposed on the generator of hazardous waste by statute and regulation are nondelegable duties that survive *Privette*, the generator is not liable to the employee of a subcontractor who is employed to dispose of the hazardous waste unless it is shown that the generator's conduct affirmatively contributed to the employee's injuries."[14] (*Park*, at pp. 609–610.)

Turning to the question of whether the defendant affirmatively contributed to the plaintiff's injuries, *Park* noted the plaintiff argued the defendant was directly negligent in failing to decommission the batteries. (*Park, supra,* 108 Cal.App.4th 595, 611.) *Park* disagreed. There was no evidence the original packaging was inadequate. The repackaging of the batteries was a superseding cause of the injury. (*Ibid.*)

*Park* also rejected the plaintiff's argument that the railroad affirmatively contributed to his injury because the person who signed the manifest (who was an employee of the contractor) was the railroad's agent. (*Park, supra,* 108 Cal.App.4th 595, 611–612.) The injury was caused by the negligent packing, not by the certification that the items had been properly packed. (*Ibid.*)

Lange does not address *Park, supra,* 108 Cal.App.4th 595. Instead, Lange argues plaintiff's theory of breach of regulatory duty is akin to his argument that Lange owed him a nondelegable duty of care, and *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117 [63 Cal.Rptr.2d 359] (*Lopez*), assertedly held nondelegable duty is merely another way of arguing peculiar risk (which

---

[14] Plaintiff applauds *Park*'s statement that the theory of nondelegable duties survives *Privette*, and plaintiff argues *Sheeler v. Greystone Homes, Inc.* (2003) 113 Cal.App.4th 908, 922 [6 Cal.Rptr. 683], reached an erroneous, contrary conclusion by stating that the nondelegable duty rule is a form of vicarious liability (because it is not based on personal fault of the landowner who hired the contractor) and for that reason the nondelegable duty rule is incompatible with the limitations on hirer liability established in *Privette, supra,* 5 Cal.4th 689, and its progeny. *Sheeler* said the defendant could be liable if it had control of the dangerous condition and affirmatively contributed to the injury, but the evidence showed the defendant enforced compliance with OSHA safety regulations, and defendant's supervisors abated hazards when aware of them. (*Sheeler*, at p. 922.) We do not view *Park* and *Sheeler* as inconsistent. Insofar as a plaintiff seeks to make the hirer vicariously liable, the nondelegable duty rule does not survive *Hooker, supra,* 27 Cal.4th 198. However, the hirer may be liable where its breach of a nondelegable duty affirmatively contributed to the injury.

is barred by *Privette, supra,* 5 Cal.4th 689). However, *Lopez* did not address nondelegable duty based on breach of regulatory duty. (*Lopez, supra,* at p. 1129, fn. 7.) *Lopez* affirmed summary judgment in favor of a property owner and its lessee, where the lessee hired an independent contractor to excavate and remove underground storage tanks, and the contractor's employee was injured when the walls of the excavation pit collapsed. (*Id.* at p. 1121.) *Lopez* involved nondelegable duty based on retained control and ultrahazardous activity, not breach of regulatory duty.

The plaintiff in *Lopez* did assert breach of Cal-OSHA duties, but the court did not reach the merits because at that time Cal-OSHA regulations could not be used as evidence in third party actions. (*Lopez, supra,* 54 Cal.App.4th 1117, 1130; see now, *Elsner v. Uveges* (2004) 34 Cal.4th 915 [22 Cal.Rptr.3d 530, 102 P.3d 915] [statutory amendment now allows use of Cal-OSHA regulations in third party actions].)

We conclude, consistent with *Park, supra,* 108 Cal.App.4th 595, that Lange may be liable if its breach of regulatory duties, owed to plaintiff, affirmatively contributed to plaintiff's injuries.

## C.  *Fire Code*

Plaintiff asserted, and the record supports, that Lange affirmatively contributed to plaintiff's injuries by violating a Fire Code requirement to provide fire extinguishers.[15]

Thus, plaintiff asserted in his separate statement of disputed facts that Lange was required by custom and practice to have suitable fire extinguishers within 75 feet of the storage tanks, where fire was likely to occur. As evidentiary support, plaintiff cited the declaration of his expert, who opined Lange, as a petroleum bulk plant facility, was required by *both* the California Fire Code and industry custom, to have suitable fire extinguishers within 75 feet of the tanks. Plaintiff's opposition memorandum in the trial court quoted section 7904.4.9.2 of the 1998 California Fire Code, applicable to petroleum bulk plant facilities, which provides as follows: "Suitable portable fire extinguishers with a rating of not less than 20-B shall be located within 75 feet (22860 mm) of those portions of the facility where fires are likely to occur, such as hose connections, pumps and separator tanks."

Lange does not contend the Fire Code was inadequately put in issue in the trial court.

---

[15] Plaintiff asserts Lange's failure to provide fire extinguishers also violated a provision of the Labor Code. Lange argues the Labor Code protects only Lange's employees. We need not resolve this dispute, because the Fire Code suffices to require reversal of the summary judgment.

As indicated, plaintiff submitted his expert's opinion that the Fire Code required Lange to have fire extinguishers within 75 feet of the site of the explosion. The witness, William Clugston, attested: "I looked for a fire extinguisher but saw no fire extinguishers in the area."[16] Clugston ran approximately 50 yards to the loading dock area of the warehouse to get fire extinguishers. He said: "Had there been a fire extinguisher in the area, I would have immediately used it to extinguish the flames on [plaintiff's] body." After patting out the fire from plaintiff's remaining clothing, Clugston ran to get a bench for plaintiff and then stayed with him until emergency medical personnel arrived. Clugston did not see anyone else use a fire extinguisher on plaintiff.

Plaintiff's doctor attested: "Had the flames on [plaintiff's] clothing been extinguished more quickly than they were, his injuries would not be as severe as they are."

Lange president John Crowston testified in deposition that there was a fire extinguisher in the warehouse. Some pages of deposition are omitted, and the next page in the record begins in the middle of a discussion about fire extinguishers. Crowston said there was a fire extinguisher near the propane tank and two or three fire extinguishers in his office. However, Lange cites no evidence of the proximity of his office or the propane tank to the explosion site. Crowston also said there were no other fire extinguishers on the property, and he did not see any "at the scene" before the explosion. After the explosion, he got a fire extinguisher and went to plaintiff; Crowston estimated this took 45 seconds. He said he sprayed plaintiff with the fire extinguisher to cool him down.

Before the accident, Crowston did not discuss with the contractors the location of Lange's fire extinguishers.

This record shows triable issues of material fact as to whether Lange breached a regulatory duty to provide fire extinguishers pursuant to the Fire Code, and whether such breach affirmatively contributed to plaintiff's injuries.

On appeal, Lange argues the Fire Code does not apply, because it refers to locations where fires are likely to occur. Lange suggests the scene of the explosion was an unlikely location for a fire. However, Lange cites no evidence in the record supporting this suggestion or refuting the contrary

[16] We disregard as unnecessary (and therefore need not address Lange's objection to) a similar declaration from another witness, which was not submitted until plaintiff's motion for a new trial.

opinion of plaintiff's expert. On this record, we cannot conclude as a matter of law (as we must if Lange is to prevail) that a fire was unlikely in this location.

Lange also argues that, even if the location constituted a likely location for a fire, there was no evidence that a fire extinguisher was *not* located within 75 feet of the storage tanks. Lange acknowledges Clugston's declaration, but says that declaration was inadequate because it merely stated he saw no fire extinguishers "in the area."

■ However, Lange misperceives the standard of review in summary judgment cases. In reviewing summary judgment, we must "view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his] evidentiary submission while strictly scrutinizing defendant['s] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor. [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

So construed, plaintiff's evidence is sufficient to defeat the summary judgment motion.

Lange argues that, regardless of whether or not it was necessary to have a fire extinguisher within 75 feet of the tanks, the Fire Code cannot serve as a substitute for the requirement in *Privette, supra,* 5 Cal.4th 689, and its progeny (*Hooker, supra,* 27 Cal.4th 198), that a hirer must have retained and exercised control over the safety conditions of a project in order to hold it liable under the circumstances of this case. Lange argues (applying circular reasoning) that the fact that it did not provide fire extinguishers shows that it did not retain any control over the project.

■ However, we have explained that retained control is only one theory of liability and does not foreclose liability based on breach of a regulatory duty.

■ We note Lange does not argue that breach of the Fire Code must have affirmatively contributed to the explosion itself, rather than merely contributing to the injuries. Case law refers to liability where the defendant "affirmatively contributed to the employee's injuries." (E.g., *Hooker, supra,* 27 Cal.4th 198, 202, 214.) The trial court rejected the Fire Code as basis for liability on two grounds: (1) plaintiff failed to provide evidence that no fire extinguisher was properly located on the premises; and (2) since Lange did

not retain control of the tank-cleaning operation and did not participate in the operation, it could not have affirmatively contributed to plaintiff's injuries, whether or not it committed regulatory violations. We have explained why both grounds are wrong.

At oral argument in this court, Lange argued the Fire Code was triggered only because of the activity of the contractors, and therefore Lange was not responsible for compliance with the Fire Code. We disagree. The pertinent Fire Code provision (§ 7904.4.9.2) is part of section 7904.4, which is labeled, "Bulk Plants or Terminals." Lange acknowledges its business is a bulk plant facility. (See fn. 5, *ante*, at p. 288.) Under section 7904.4.1 of the Fire Code: "Portions of properties where flammable and combustible liquids are received by tank vessels, pipelines, tank cars or tank vehicles and are stored or blended in bulk for the purpose of distributing such liquids by tank vessels, pipelines, tank cars, tank vehicles or containers shall be in accordance with Section 7904.4." Thus, the Fire Code's fire extinguisher requirement was triggered by the fact that Lange owned property where flammable liquids were stored for distribution. The duty to supply fire extinguishers was on the owner of the bulk plant.

At oral argument, Lange submitted to this court a citation to *Laico v. Chevron U.S.A., Inc.* (2004) 123 Cal.App.4th 649 [20 Cal.Rptr.3d 307]. *Laico* held a petroleum company (Chevron U.S.A.) that owned land occupied by a petrochemical research laboratory (CRTC) was not liable to a special employee of CRTC who alleged he contracted a blood disorder caused by exposure to benzene in the course of his work. (*Id.* at p. 656.) Although *Laico* did not involve an independent contractor, the Sixth Appellate District cited *Privette, supra,* 5 Cal.4th 689, and its progeny as analogous support for its decision. (*Laico, supra,* at p. 668.) There was no issue of breach of regulatory duty. We see nothing in *Laico* helpful to Lange.

We conclude liability may be predicated upon Lange's breach of its own regulatory duties, regardless of whether or not it voluntarily retained control or actively participated in the project. (*Park, supra,* 108 Cal.App.4th 595.) For purposes of imposing liability for affirmatively contributing to a plaintiff's injuries, the affirmative contribution need not be active conduct but may be in the form of an omission to act. (*Hooker, supra,* 27 Cal.4th 198, 212, fn. 3.)

We conclude reversal of the summary judgment is required, because Lange failed to negate the theory that Lange is liable for injury to plaintiff, based on Lange's breach of its regulatory duty under the Fire Code to provide fire extinguishers.

## DISPOSITION

The judgment in favor of Jesse M. Lange Distributor, Inc., is reversed. Plaintiff shall recover his costs on appeal. (Cal. Rules of Court, rule 27(a).)

Scotland, P. J., and Morrison, J., concurred.

A petition for a rehearing was denied June 2, 2005, and respondent's petition for review by the Supreme Court was denied August 24, 2005.